**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

NELSON AND IVELISSE CASTRO,

     Plaintiffs,

     v.

UNION NISSAN, INC., and
ONYX ACCEPTANCE CORPORATION,

     Defendants.

)
)
)
)
)
)
)
)
)
)

**DOCKETED**
JUN 2 8 2001

No.      01C 4996

JUDGE KENNELLY

JURY TRIAL REQUESTED

MAGISTRATE JUDGE ROSEMOND

### Introduction

1.     Nelson and Ivelisse Castro file this Complaint for damages against Union Nissan, Inc. for its fraudulent misrepresentations and other unlawful activities surrounding the sale and financing of a 1996 Toyota 4Runner. Plaintiffs seek injunctive and declaratory relief against Onyx Acceptance Corporation ("Onyx") because of the interest Onyx asserts in the Castros' trade-in vehicle.

### Jurisdiction and Venue

2.     Federal question jurisdiction exists pursuant to 28 U.S.C. §1331 because Plaintiffs' claims arise under the Truth in Lending Act ("TILA"), 15 U.S.C. §1601 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.*, and the Equal Credit Opportunity Act, 15 U.S.C. §1691 *et seq.* Supplemental jurisdiction over the state law claims exists under 28 U.S.C. §1367(a).

3.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district. Venue is also proper in this district since Defendants can be found, have agents, and transact business in this district.

### Parties

4.     Plaintiffs, Nelson and Ivelisse Castro, are citizens of the State of Illinois who reside within this district.

5.     Defendant, Union Nissan, is an Illinois corporation doing business in this district at 3315 West Grand Avenue, Waukegan, Illinois 60085.

6.     Defendant, Onyx Acceptance Corporation, is a Delaware corporation licensed to do and doing business in this district with a dealer center located at 6250 River Road, Suite 7010, Rosemont, Illinois 60018.

### Factual Allegations

7.     On September 4, 2000, Nelson and Ivelisse Castro went to Union Nissan to inquire about a Toyota 4Runner visible on the dealership's lot.

8.     After taking the car for a test drive, the Castros decided that they liked the vehicle and were interested in knowing its price. The Union Nissan sales agent would not quote the Castros a price, instead telling them that she would do whatever she could to come down on the price.

9.     After investigating Nelson Castro's credit, Union Nissan told the Castros that the financing would have to be arranged with Ivelisse Castro as the buyer.

10.     Union Nissan informed the Castros that it had obtained financing for Ivelisse and was prepared to execute the necessary documents.

11.     The financing was with Great Lakes Credit Union as reflected in the retail installment contract, a copy of which is attached as Exhibit A.

12.     Neither Nelson nor Ivelisse Castro were provided with a copy of the retail installment contract prior to consummation of the sale.

13.     The retail installment contract reflected the Castros' trade-in vehicle, a 1993 Jeep Grand Cherokee, valued at $12,000.00.  The amount of the lien payoff was $6500.00.  *See* Exhibit A.

14.     After the trade-in, the unpaid balance of the cash price was $18,549.00.

15.     As part of the same transaction, Union Nissan also sold Ivelisse Castro a vehicle service contract for $1500.00 and a credit life insurance policy for $728.02.  *See* Exhibit A.

16.     The Castros decided to purchase the vehicle service contract after the Union Nissan sales agent informed them that the vehicle came with a warranty covering 50% labor and 50% parts for thirty days.

17.     The Castros wrote two checks to serve as a downpayment for the vehicle.  One check for $500.00 was to be deposited immediately.  The second check, for $700.00, was to be held for thirty days, under a "Hold Check Agreement."

18.     The Union Nissan sales agent informed the Castros that the term of the contract was 48 months and the first payment was scheduled to be due in 45 days.

19.     After completing the paperwork, the Castros left with the 4Runner.

20.     When the Castros went home and looked at the paperwork, they noticed that the term of the contract was 54 months instead of 48 months, and the first payment was due in 30 days, not 45 days.  All payments were to be made to Great Lakes Credit Union.

21.     The Castros also saw an advertisement for the 4Runner they had purchased. According to the advertisement, Union Nissan was selling the 1996 Toyota 4Runner Limited 4WD, Vin JT3HN87R7T008810, for $21,201.00.

22.     Union Nissan sold the 1996 Toyota 4Runner Limited 4WD, Vin JT3HN87R7T008810, to the Castros for $24,249.00, which was above the advertised price.

23.     On or about September 6, 2000, Nelson Castro spoke with an agent of Great Lakes Credit Union to find out about the payments. The agent informed him that the Credit Union did not have an account for Ivelisse Castro.

24.     On or about September 6, 2000, Nelson Castro went to Union Nissan to return the vehicle. Union Nissan would not allow him to return the vehicle because it wanted another day to obtain financing for Ivelisse. Union Nissan threatened to charge him for the use of the vehicle and said it would keep the down payment.

25.     When the Castros again asked to return the 4Runner, Union Nissan's finance manager refused, telling them they had to give the dealership until September 12, 2000 to arrange for financing.

26.     Saying that he was "a man of his word," the finance manager changed the Delivery Rider to reflect that the Castros had until Tuesday, September 12, 2000 to return the vehicle at no charge upon notice that Union Nissan agreed to return any down payment or trade-in.

27.     The finance manager was unavailable until September 14, 2000 and on that date, he informed the Castros that the deal was almost worked out but "it was $1000.00 short." Again, despite the Castros' wishes that Union Nissan take back the 4Runner and stop seeking to finance the deal, the finance manager refused.

28.     The Castros retained an attorney who called Union Nissan to inquire about the financing arrangement. Union Nissan told the attorney that Ivelisse Castro's loan was through Algonquin Bank when no financing had yet been arranged.

29.     The Castros' attorney was unable to contact Algonquin Bank because its number was unlisted. He was unable to receive any further information from Union Nissan.

-4-

30.     Despite the fact that Union Nissan had still not obtained financing for the Castros, Union Nissan refused to return the Castros' trade-in vehicle, the Jeep Grand Cherokee, and refused to allow the Castros to return the 4Runner. Union Nissan also refused to return the down payment.

31.     In September, October, and November of 2000, Nelson and Ivelisse Castro received several denial of credit letters based upon Union Nissan's repeated financing requests.

32.     On or about September 12, 2000, Ivelisse Castro received notice of a credit denial from Union Acceptance Corporation. The date of application was September 8, 2000.

33.     On or about October 31, 2000, Ivelisse Castro received another notice of a credit denial from Union Acceptance Corporation. The date of this application was October 27, 2000.

34.     On or about October 31, 2000, Nelson Castro received notice of a credit denial from GreatBank at 234 S. Randall Road, Algonquin, Illinois 60102.

35.     On or about November 3, 2000, Ivelisse Castro received notice of a credit denial from Nissan Motor Acceptance Corporation at P.O. Box 660360, Dallas, Texas 75266-0360. The letter stated that Nissan Motor Acceptance Corporation had referred her credit application for consideration to Summit Acceptance Corporation at 3939 Beltline Road, Suite 500, Dallas, Texas 75244.

36.     On or about November 8, 2000, Ivelisse Castro received notice of a credit denial from First Midwest at P.O. Box 9003, Gurnee, Illinois 60031.

37.     The 4Runner was repossessed on or about October 30, 2000.

38.     On or about October 31, 2000, after the repossession, the Castros' attorney sent a notice of dispute to Western Diversified Life, the holder of the credit life insurance policy sold by Union Nissan.

39.     On or about October 31, 2000, the Castros' attorney sent a pre-suit notification to Union Nissan, as required under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a.

40.     On or about November 6, 2000, Onyx Acceptance Corporation, holder of the interest in the Castros' trade-in vehicle, sent a loan statement to the Castros informing them that a payoff had been received on October 6, 2000 and the account was now paid in full.

41.     On or about December 6, 2000, Oxyx sent another loan statement to the Castros that reflected there had been "payoff reversal" activity on the account and the account was no longer paid off.

42.     On or about December 11, 2000, Onyx called the Castros demanding payment on the Jeep Cherokee.  An Onyx representative stated that the payoff check from Union Nissan had bounced.

## COUNT I
### *Violations of the Truth in Lending Act Against Union Nissan, Inc.*

43.     Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-42 as if set forth fully in this Count.

### *First Violation*

44.     The Truth in Lending Act, 15 U.S.C. §1638(b)(1), mandates timely written disclosures of financing terms.

45.     Regulation Z, 12 C.F.R. §226.17(a) and (b), interpreting the Truth in Lending Act, states, in relevant part:

> (a)     *Form of disclosures*
>
>> (1)     *The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep...*

> (b)    *Time of disclosures. The creditor shall make disclosures before consummation of the transaction...*

46.    Union Nissan violated §1638(b)(1) of the Truth in Lending Act by not providing Plaintiffs with the proper disclosures, in a form they could keep, before consummation of the transaction.

### *Second Violation*

47.    15 U.S.C. §1638(a) sets forth the creditor's required disclosures. Under §1638(b), these disclosures are to be made before credit is extended.

48.    Under the terms of the retail installment contract, the amount financed was $21,832.84. The annual percentage rate (APR) was disclosed at 13.5%, with a payment schedule set forth at $544.72 per month for 54 months.

49.    The APR was inaccurately disclosed, in violation of §1638(a), because at 13.5%, the payment schedule should have been listed as $541.68 per month for 54 months.

50.    Although Union Nissan gave the Plaintiffs possession of the vehicle on September 4, 2000, it did not obtain financing for them on that day.

51.    As a result, the Federal Truth in Lending Disclosure Statement was inaccurate.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendant, Union Nissan, Inc., and award:

(A)    Actual and statutory damages as provided by 15 U.S.C. §1640;

(B)    Attorneys' fees and costs; and

(C)    Any other relief the Court deems just and appropriate.

### COUNT II
### *Violations of the Fair Credit Reporting Act Against Union Nissan, Inc.*

52.     Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-42 as if set forth fully in this Count.

### *Violations of §1681b(f) for Impermissible Use of a Credit Report*

53.     Section 1681b(f) of the Fair Credit Reporting Act ("FCRA") provides in relevant part that:

> *Certain use or obtaining of information prohibited. A person shall not use or obtain a consumer report for any purpose unless*
>
> *(1)     the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and*
>
> *(2)     the purpose is certified in accordance with [§1681e] by a prospective user of the report through a general or specific certification.*

54.     Union Nissan violated §1681b(f) of the FCRA when it repeatedly attempted to finance the Plaintiffs' purchase of the Toyota 4Runner, despite Plaintiffs' continued requests that Union Nissan allow them to return the vehicle.

55.     Plaintiffs did not authorize Union Nissan to pull and/or use their consumer reports multiple times.

56.     After the Plaintiffs learned Ivelisse Castro was not approved for financing through Great Lakes Credit Union, Plaintiffs told Union Nissan's finance manager that they did not wish to purchase the 4Runner.

57.     Union Nissan continued to "shop around" for a finance company that would finance the Plaintiffs' purchase, thereby authorizing multiple finance companies to pull Plaintiffs' credit reports without the proper authorization from the Plaintiffs.

58.     Union Nissan willfully failed to comply with §1681b(f) by ignoring the Plaintiffs' wishes that the dealer's financing efforts cease.

59.     Union Nissan knowingly permitted third parties to obtain the Plaintiffs' credit reports without a permissible purpose.

60.     Plaintiffs' were damaged by Union Nissan's willful noncompliance in that a consumer's credit score drops each time the consumer's credit report is pulled. Plaintiffs' credit reports were pulled by multiple finance companies at least five times in connection with the Union Nissan transaction.

### *Violations of §1681m for Failure to Provide Notice of Adverse Credit Action*

61.     Section 1681m of the FCRA provides in relevant part that:

(a)     *Duties of users taking adverse actions on the basis of information contained in consumer reports. If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall*

(1)     *provide oral, written, or electronic notice of the adverse action to the consumer*

(2)     *provide to the consumer orally, in writing, or electronically*

(A)     *the name, address, and telephone number of the consumer reporting agency...that furnished the report to the person; and*

(B)     *a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and*

(3)     *provide to the consumer an oral, written, or electronic notice of the consumer's right*

(A)     *to obtain...a free copy of a consumer report...; and*

(B)     *to dispute...with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.*

62.     Plaintiffs left the Union Nissan dealership with the 4Runner after the sales representative informed them that financing had been arranged.

63.     Plaintiffs never received oral, written, or electronic notice from Union Nissan that finance companies were taking adverse action against them and refusing to finance the purchase of the vehicle.

64.     Union Nissan told Plaintiffs several times that it was trying to obtain financing. But Union Nissan did not explain at any time that it was using Plaintiffs' credit reports and authorizing multiple finance companies to pull Plaintiffs' credit reports.

65.     Union Nissan took an adverse action against Plaintiffs by not extending credit for the purchase of the 4Runner to either Nelson or Ivelisse Castro.

66.     Union Nissan used Plaintiffs' credit reports without providing them with notice of adverse action, in violation of §1681m.

67.     Union Nissan used Plaintiffs' credit reports without providing them with notice of their rights under §1681m(a)(3), in further violation of §1681m.

68.     Union Nissan willfully failed to comply with §1681m when it failed to provide Plaintiffs' with proper notice of its adverse action.

69.     Plaintiffs' were damaged by Union Nissan's willful noncompliance in that they were deprived of valuable economic information and were unable to assess the number of times they were being denied credit and adverse action was taken against them. Moreover, Plaintiffs' were unaware of their rights under the FCRA, as provided by §1681a(3).

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendant, Union Nissan, Inc., and award:

(A)     Actual and statutory damages as provided by 15 U.S.C. §1681n;

(B)     Punitive damages, as provided by 15 U.S.C. §1681n, in an amount sufficient to punish and deter Union Nissan and other similarly-situated automobile dealers from conducting themselves in the manner described in this Count;

(C)     Attorneys' fees and costs; and

(D)     Any other relief the Court deems just and appropriate.

## COUNT III
### *Violation of the Equal Credit Opportunity Act Against Union Nissan*

70.     Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-42 as if set forth fully in this Count.

71.     Union Nissan is a "creditor," as that term is defined in §1691a of the Equal Credit Opportunity Act ("ECOA"), because it regularly arranges for the extension of credit to consumers for the purchase of automobiles and/or regularly extends, renews, or continues credit itself.

72.     Section 1691d of the ECOA provides, in relevant part, that:

*Reason for adverse action;*

(2)     *Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action by the creditor.*

(6)     *For purposes of this subsection, the term "adverse action" means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested...*

73.     Union Nissan violated §1691d of the ECOA when it failed to notify Plaintiffs in writing that Nelson and Ivelisse's initial applications for financing had been denied.

74.     The Plaintiffs suffered damages and emotional distress as a result of Union Nissan's failure to provide them with the required statement of denial in that they were deprived of valuable economic information and their rights to this information under the ECOA.  Moreover, Plaintiffs

were unable to make an immediate decision about the purchase of the 4Runner as a direct result of

Union Nissan's failure to inform them in writing of the denial(s) of credit and reasons for such

denial(s).

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against

Defendant, Union Nissan, Inc., and award:

(A)     Actual damages, under 15 U.S.C. §1691e(a), in an amount to be
        proven at trial;

(B)     Punitive damages, under 15 U.S.C. §1691e(b), in an amount
        sufficient to punish and deter Union Nissan and other similarly-
        situated automobile dealers from conducting themselves in the
        manner described in this Count;

(C)     Attorneys' fees and costs, under 15 U.S.C. §1691e(d); and

(D)     Any other relief the Court deems just and appropriate.

## COUNT IV
### *Violation of Section 2C of the Illinois Consumer Fraud Act Against Union Nissan*

75.     Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-42 as if

set forth fully in this Count.

76.     The Illinois Consumer Fraud Act at 815 ILCS 505/2C states in relevant part that:

*If the furnishing of merchandise, whether under purchase order or a contract of sale,
is conditioned on the consumer's providing credit references or having a credit rating
acceptable to the seller and the seller rejects the credit application of that consumer,
the seller must return to the customer any down payment . . . made under that
purchase order or contract and may not retain any part thereof.*

77.     On September 4, 2000, Ivelisse Castro signed a purchase order for the sale of a

vehicle that Union Nissan intended to be conditioned on Plaintiffs' having an acceptable credit

rating.

78.     On September 4, 2000, Plaintiffs tendered a $1,200 down payment to Union Nissan.

79.    After being unable to secure financing for the purchase of the vehicle, Union Nissan rejected the Plaintiffs' credit application but never returned any down payment, in violation of 815 ILCS 505/2C.

80.    Plaintiffs were damaged as a result of Union Nissan's violation of 815 ILCS 505/2C, including damage in the form of their lost down payment.

81.    All of Union Nissan's representations and actions with respect to the transaction were made in the course of trade or commerce.

82.    Union Nissan, operating as a used vehicle dealer as defined by 625 ILCS 5/1-215, willfully and/or intentionally refused to return Plaintiffs' down payment, in reckless disregard of Plaintiffs' rights.

83.    Union Nissan's conduct has caused public injury and/or an effect on consumers and the public interest because such conduct has the potential for repetition.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendant, Union Nissan, Inc., and award:

    (A)    Actual damages in an amount to be proven at trial;

    (B)    Punitive damages in an amount sufficient to punish and deter Union Nissan and other similarly-situated automobile dealers from conducting themselves in the manner described in this Count;

    (C)    Attorney's fees and costs; and

    (D)    Any other relief the Court deems just and appropriate.

## COUNT V
### Violation of the Illinois Consumer Fraud Act for Unlawful Spot Delivery
### Against Union Nissan

84.    Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-42 as if set forth fully in this Count.

85.    The Illinois Consumer Fraud Act at 815 ILCS 505/2 states in relevant part that:

*...unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact...in the conduct of any trade or commerce are hereby declared unlawful...*

86.    Union Nissan committed a practice known as "spot delivery" as part of the used vehicle transaction involving the Plaintiffs.

87.    Spot delivery is a practice in which a car dealer executes a sale and delivers the car before any financing has been provided to the consumer.

88.    Union Nissan performed a spot delivery on September 4, 2000 when it executed a retail installment contract and gave possession of the vehicle to the Castros without having secured financing.

89.    The spot delivery in this case was an unfair and deceptive practice within the meaning of 815 ILCS 505/2 because the tactic was designed to forge an illusory bond of commitment between Union Nissan and the Plaintiffs, allowing Union Nissan leverage in later finance negotiations because Plaintiffs had already been given the vehicle and surrendered possession of their trade-in vehicle.

90.    The spot delivery in this case was an unfair and deceptive practice within the meaning of 815 ILCS 505/2 because it offends public policy by causing substantial injury to consumers.

91.    The spot delivery in this case was an unfair and deceptive practice within the meaning of 815 ILCS 505/2 because the practice is likely to confuse consumers about their rights, contractual obligations, the actual terms of the deal, and the actual status of ownership and title of the vehicle.

92.    Union Nissan performed the spot delivery with the intent that Plaintiffs rely on its representations regarding the retail installment contract, financing, and ownership rights in the vehicle.

93.    Plaintiffs were damaged as a proximate result of Union Nissan's unfair and deceptive conduct.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendant, Union Nissan, Inc., and award:

    (A)    Actual damages in an amount to be proven at trial;

    (B)    Punitive damages in an amount sufficient to punish and deter Union Nissan and other similarly-situated automobile dealers from conducting themselves in the manner described in this Count;

    (C)    Attorney's fees and costs; and

    (D)    Any other relief the Court deems just and appropriate.

### COUNT VI
*Violation of the Consumer Fraud Act for Fraudulent Misrepresentations*
*Against Union Nissan*

94.    Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-42 as if set forth fully in this Count.

95.    815 ILCS 505/2 prohibits unfair or deceptive acts or practices, including the use of misrepresentations designed to induce consumers to take certain action.

96.    On September 4, 2000, Union Nissan misrepresented to Plaintiffs that the price of the 4Runner, VIN JT3HN87R7T0008810, was $25,249.00. An advertisement running during that time indicated that the 4Runner, VIN JT3HN87R7T0008810, was priced at $21,201.00 at Union Nissan.

97.    Union Nissan made such statements regarding the price of the 4Runner to Plaintiffs with the intent that they would rely on such statements and purchase the vehicle.

98.     On September 4, 2000, Union Nissan misrepresented to Plaintiffs that the term of the retail installment contract would be 48 months. When the Plaintiffs took the contract home and had the opportunity to read it for the first time, they learned the contract was for a 54 month-term.

99.     Union Nissan misrepresented the term of the installment contract with the intent that Plaintiffs would rely on such statements and consummate the transaction.

100.    Union Nissan misrepresented to Plaintiffs that the APR was 13.5% on the retail installment contract and the amount of each monthly payment was $544.72. In fact, a 13.5% APR would have meant a monthly payment of approximately $541.68. Therefore, the APR was higher than Union Nissan disclosed on the retail installment contract, somewhere in the range of 13.744%.

101.    Union Nissan misrepresented the cost of financing with the intent that Plaintiffs would purchase the vehicle because of a lower APR.

102.    All these misrepresentations were made in the course of conduct involving trade and commerce.

103.    Plaintiffs were damaged as a direct result of Union Nissan's misrepresentations in that they incurred greater than necessary expenses associated with the purchase of the vehicle.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendant, Union Nissan, Inc., and award:

(A)     Actual damages in an amount to be proven at trial;

(B)     Punitive damages in an amount sufficient to punish and deter Union Nissan and other similarly-situated businesses from conducting themselves in the manner described in this Count;

(C)     Attorney's fees and costs; and

(D)     Any other relief the Court deems just and appropriate.

### COUNT VII
*Common Law Injunctive and Declaratory Relief*
*Against Onyx Acceptance Corporation*

104. Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-42 as if set forth fully in this Count.

105. On the retail installment contract, Union Nissan represents that it will pay off the $6500.00 lien on the Plaintiffs' trade-in vehicle.

106. Union Nissan did not pay off the $6500.00 lien and Defendant Onyx Acceptance has demanded full payment of $6563.68 from Plaintiffs.

107. Plaintiffs surrendered their trade-in vehicle to Union Nissan on September 4, 2000 and were unable to ever regain possession of it.

108. Plaintiffs would suffer great harm if forced to pay the remaining balance on a vehicle no longer in their possession or under their control, when Union Nissan has retained the benefits associated with such vehicle.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendant, Onyx Acceptance Corporation, in the form of:

(A) An injunction preventing Onyx from asserting further claims against Plaintiffs with respect to the lien on the 1993 Jeep Grand Cherokee Laredo;

(B) A declaration that Plaintiffs do not owe any unpaid amounts to Onyx; and

(C) Any other relief the Court deems just and appropriate.

Respectfully submitted,

By: _____
One of Plaintiffs' Attorneys

-17-

Lance A. Raphael
Stacy M. Bardo
The Consumer Advocacy Center, P.C.
25 East Washington, Suite 1805
Chicago, IL 60602
(312) 782-5808

Christopher V. Langone
Joel D. Dabisch
Mark T. Lavery
The Langone Law Firm
25 East Washington, Suite 1805
Chicago, IL 60602
(312) 782-2000

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

NELSON AND IVELISSE CASTRO

**DEFENDANTS**

UNION NISSAN, INC., AND ONYX
ACCEPTANCE CORPORATION

01C 4996

JUDGE KENNELLY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___COOK___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

MAGISTRATE JUDGE ROSEMOND

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Lance A. Raphael of
The Consumer Advocacy Center
25 East Washington, Suite 1805
Chicago, Illinois 60602

ATTORNEYS (IF KNOWN)

**DOCKETED**

JUN 2 8 2001

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)   AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint

**JURY DEMAND:** ☒ YES ☐ NO

## VIII. This case

☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE
6-28-01

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of

Nelson and Ivelisse Castro

v.

Union Nissan, Inc., and
Onyx Acepptance Corporation

# 01C 4996

Case Number: **JUDGE KENNELLY**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR: **DOCKETED**

Nelson and Ivelisse Castro

JUN 2 8 2001

MAGISTRATE JUDGE ROSEMOND

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Lance A. Raphael | NAME Stacy M. Bardo |
| FIRM The Consumer Advocacy Center, P.C. | FIRM The Consumer Advocacy Center, P.C. |
| STREET ADDRESS 25 E. Washington, Suite 1805 | STREET ADDRESS 25 E. Washington, Suite 1805 |
| CITY/STATE/ZIP Chicago, Illinois 60602 | CITY/STATE/ZIP Chicago, Illinois 60602 |
| TELEPHONE NUMBER (312)782-5808 | TELEPHONE NUMBER (312)782-5808 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6216730 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6271913 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☒ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |