Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4996 | **DATE** | 7/3/02 |
| **CASE TITLE** | Castro vs. Nissan | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached order, plaintiff's motion for summary judgment (28-10 is granted in part and denied in part as set forth above. Plaintiffs' motion to bar testimony or evidence (28-3) is denied as moot. Status hearing set to 7/18/02 at 9:30 a.m. for the purpose of setting a trial date with regard to plaintiffs' damages on the claims on which they have obtained summary judgment as to liability and to address how plaintiffs' remaining claims will be dealt with.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 0 8 2002 | |
| | Notified counsel by telephone. | | date docketed | 43 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| OR | courtroom deputy's initials | 02 JUL -7 AM 10:44 | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NELSON and IVELISSE CASTRO, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 01 C 4996 |
| UNION NISSAN, INC. and ONYX ACCEPTANCE CORPORATION, | ) ) ) ) | |
| Defendants. | ) ) | |

DOCKETED
JUL 8 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Nelson and Ivelisse Castro have sued Union Nissan, Inc. for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601(b)(1); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f); the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d); and the Illinois Consumer Fraud Act, 815 ILCS 505/2, in connection with the sale and financing of a 1996 Toyota 4-Runner. This case is before the Court on plaintiffs' motion for summary judgment.

### Facts

Although Union Nissan filed a response to plaintiffs' summary judgment motion, it failed to respond to plaintiffs' Rule 56.1 Statement of Undisputed Facts. As a result, we deem those facts admitted for purposes of ruling on the summary judgment motion. *See* Local Rule 56.1(b)(3)(B); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527-29 (7th

Cir. 2000). Additionally, Union Nissan failed to respond to Requests to Admit served by plaintiffs pursuant to Fed. R. Civ. P. 36. As a result, the facts contained in those requests are deemed admitted. *See* Fed. R. Civ. P. 36(b) ("[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission").

On September 4, 2000, the Castros went to Union Nissan where they inquired about a 1996 Toyota 4-Runner on Union's lot. After being informed that financing was available through Great Lakes Credit Union, the Castros decided to purchase the vehicle. Accordingly, Union prepared a Retail Installment Contract for the vehicle that reflected a $1200 down payment and a 13.5% annual percentage rate on the amount financed. As part of the sales contract, the Castros agreed to trade-in their current vehicle, a 1993 Jeep Cherokee. In turn, Union agreed to pay off the lien on the Jeep Cherokee that was held by defendant Onyx Acceptance Corporation. After completing the sale paperwork, the Castros left Union Nissan in their new vehicle.

At some point thereafter, the Castros contacted Great Lakes to inquire about their schedule of payments on the Toyota. Great Lakes informed the Castros that it had declined to provide financing for the vehicle. As a result, the Castros went back to Union Nissan to return the Toyota and reclaim their trade-in vehicle and down payment. Union Nissan told the Castros that it could still push the deal through, but they advised Union that they no longer wished to purchase the vehicle because the financing was not as originally represented. Union Nissan refused to allow the Castros to return the car, and the Castros again left the dealership with the Toyota.

Over the next three months, the Castros received several denial of credit letters from various lenders. The Castros had never filled out credit applications for these institutions, nor had they authorized Union Nissan to "shop around" their credit. Union Nissan apparently was never able to secure a loan for the Castros, and it repossessed the Toyota on October 30, 2000 without providing the Castros any notice of the impending repossession. Union Nissan did not return the Castros' Jeep Cherokee, and either it stopped payment on its check to Onyx Acceptance Corporation to pay off the lien on that vehicle or the check was returned for insufficient funds, thus leaving the Castros liable on the Onyx loan.

## Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, a court must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As noted above, the Castros make claims under TILA, FCRA, ECOA and the Illinois Consumer Fraud Act. We address each in turn.

I. Truth in Lending Act Claim

Plaintiffs allege that Union Nissan failed to comply with § 1638(b)(1) of TILA and accompanying Regulation Z, 12 C.F.R. § 226.17, because it failed to make certain required disclosures prior to the sale of the Toyota. "TILA is a disclosure statute; it does not regulate substantively consumer credit but rather 'requires disclosure of certain terms and conditions of

-3-

credit before consummation of a consumer credit transaction.'" *Szumny v. American General Finance Inc.*, 246 F.3d 1065, 1071 (7th Cir. 2001) (quoting *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278, 1282 (7th Cir. 1980)). Regulation Z mandates that a "creditor shall make the disclosures required by [TILA] clearly and conspicuously in writing, in a form that the consumer may keep" and that the "creditor shall make disclosures before consummation of the transaction." *See* 12 C.F.R. § 226.17(a)(1); §226.17(b). Union Nissan does not dispute that it is a "creditor" under TILA and accompanying Regulation Z.

During discovery in this case, the plaintiffs served Union Nissan with a Request to Admit that stated "Union Nissan did not provide Plaintiffs with a copy of the retail installment contract, in a form they could keep, before the document was signed." Plaintiffs' Motion for Summary Judgment, Exhibit 5, ¶ 1. Nissan provided no response to this request, nor did it petition the Court to withdraw its admission. Accordingly, Nissan's lack of response is deemed an admission for purposes of this litigation. *See* Fed. R. Civ. P. 36(a); *Kalis v. Colgate-Palmolive Company*, 231 F.3d 1049, 1052 (7th Cir. 2000). Further, "[a]dmissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987). Nissan admitted (by way of default) that it failed to comply with its TILA obligations and it cannot undo those admissions now. *See id.* ("a party cannot attack issues of fact established in admissions by resisting a motion for summary judgment"). We grant summary judgment in plaintiffs' favor on their TILA claim.[1]

---

[1] Plaintiffs have withdrawn their TILA claim based on Union Nissan's allegedly inaccurate disclosure of the APR for the financing of the vehicle. *See* Plaintiffs' Reply Br. at 2.

-4-

II.  Fair Credit Reporting Act Claims

The Castros also assert that Union Nissan violated Section 1681b(f) of FCRA by repeatedly attempting to procure credit for the Toyota after the Castros asserted that they no longer wished to complete the transaction, and by attempting to procure credit in the name of Nelson Castro. These attempts resulted in numerous unauthorized "credit pulls" on both Castros' credit records, even though the Toyota was to be financed only by Ivelisse Castro.

The FCRA is a consumer protection statute that regulates the actions of both credit reporting agencies and others who request credit information. *See* 15 U.S.C. § 1681b. Under Section 1681b(f), it is unlawful for any person to use or obtain a credit report for an unauthorized purpose. The plaintiffs have provided evidence, by way of affidavit and default admissions from Union Nissan, that they informed Union Nissan they no longer wanted to proceed with the deal once financing was denied by Great Lakes. They did not authorize Union Nissan to repeatedly attempt to secure alternative financing, yet, after the Castros attempted to return the Toyota, Union Nissan continued to contact lending institutions on their behalf. Affidavit of Nelson Castro, ¶¶ 3-7.

In response, Union Nissan first argues that the plaintiffs have provided no authority for the contention that it can be held liable under FCRA and further asserts that the instant case is factually dissimilar to one cited by plaintiffs, *Adams v. Berger Chevrolet, Inc.*, No. 00 C 226, 2001 WL 533811 (W.D. Mich., May 7, 2001). But the statute itself makes clear that a person or entity that uses or obtains a consumer's credit report for an improper purpose may be found civilly liable to that consumer. 15 U.S.C. § 1681b(f). Further, as the plaintiffs note, they cited *Adams* for the proposition that the FCRA can apply to car dealerships – not just credit

reporting agencies. *See also Pappas v. City of Calumet*, 9 F. Supp. 2d 943 (N.D. Ill. 1998) (FCRA extends not only to credit reporting agencies but also to parties who request credit information). Moreover, plaintiffs need not show that the precise factual circumstances present in *Adams* – which involved a car salesman using an individual's credit information to secure financing for others who were not creditworthy – also occurred in this case in order to recover.

Union Nissan next argues that it avoids liability because it did not request the credit reports directly; rather, it merely "requested financing from various lenders who, in turn, may have requested Plaintiffs' credit reports." Union Nissan is correct that the statute is directed only at those who "use or obtain a consumer report." 15 U.S.C. § 1681b(f). There appears to be no dispute, at least with respect to the credit pulls that occurred after September 4, that it was the third-party lenders that accessed the Castros' credit reports – not Union Nissan. At most, Union Nissan took action that ultimately resulted in the pulling of a credit report. In the absence of any authority that would extend § 1681b(f) to this situation or any argument by the Castros as to how they propose to avoid the language of the statute, we decline to interpret the statute so as to hold Union Nissan liable for the actions of the third party lenders.

The Castros also argue, however, that Union Nissan improperly accessed the report of Nelson Castro on the day the Castros initially visited the dealership. In support of their argument, the Castros attached to their reply brief a copy of Nelson Castro's credit report that shows a credit pull on September 4, 2000 by a "Union Motors." *See* Plaintiff's Reply, Exhibit A. According to the Castros (and undisputed by Union Nissan), the deal was to be financed only by Ivelisse Castro – not Nelson Castro. Indeed, the Retail Installment Contract for the 1996 Toyota is only in the name of, and signed by, Ivelisse Castro. If Union Nissan requested Nelson Castro's

credit report on September 4, 2000, that request could constitute a violation of § 1681b(f). However, elsewhere in their summary judgment papers, the Castros assert that it was Great Lakes that handled the initial financing request on September 4, 2000. *E.g.*, Plaintiff's Memorandum in Support of Summary Judgment at 8-9. At this point, it is unclear whether Union Nissan is the entity that obtained Nelson's credit report. We therefore deny the Castros' motion for summary judgment on their FCRA § 1681b(f) claim.

The Castros also assert that Union Nissan violated Section 1681m(a) of FCRA by failing to provide proper notice of an "adverse action." 15 U.S.C. § 1681m(a). Section 1681m(a) provides that a person or entity must provide oral, written or electronic notice of any "adverse action [taken] with respect to any consumer that is based in whole or in part on any information contained in a consumer report." *Id.* In response, Union Nissan argues that plaintiffs have "failed to prove" that repossession is an adverse action. This argument is without merit. The statute defines "adverse action" to include "*any* action taken ... that is adverse to the interests of a consumer," 15 U.S.C. § 1681a(k)(B)(iv)(II) (emphasis added), and there can be no real dispute that the repossession of a vehicle is "adverse" to the owner's interests.

Union Nissan next argues that plaintiffs had proper notice of the repossession pursuant to Section 1681m because they were "clearly aware" of the repossession, presumably by virtue of the fact that the vehicle disappeared one day. However, the statute directs that the required notice must include, among other things, the name and address of the consumer reporting agency that furnished the consumer's credit report and must inform the consumer of his or her rights under FCRA to obtain a copy of the credit report and to dispute its contents. *See* 15 U.S.C. § 1681m(a)(3). There is no evidence that Union Nissan satisfied these requirements and

-7-

the repossession alone is not sufficient notice under the statute.

The real hole in the Castro's claim, however, stems from the statutory requirement that to be liable, the defendant must have taken adverse action "that is based in whole or in part on any information contained in a consumer report." 15 U.S.C. § 1681m(a). In this case, there is no indication that Union Nissan repossessed the car due to the condition of the Castros' credit reports; rather, the car was repossessed because it had not been paid for. As the Castros have not shown the requisite nexus between the action taken by Union Nissan and the information contained in their credit reports, their motion for summary judgment on their § 1681m(a) claim is denied.

III.     Equal Credit Opportunity Act Claim

The Castros also claim that Union Nissan violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d), by failing to satisfy its notice requirements. Section 1691(d) requires a creditor to notify a credit applicant of any "adverse action" taken against him or her by that creditor. Notice must be given within thirty days after receipt of a completed application for credit and must provide a statement of the reasons for such action. *Id.* Union Nissan again argues "[p]laintiffs cannot point to any authority that any of Union Nissan's actions are considered 'adverse actions' under ... the ECOA." But under the ECOA, "adverse action" means "a denial or revocation of credit." 15 U.S.C. §1691(d). It is clear that the Castros experienced a denial of credit shortly after visiting the dealership on September 4, 2000 and that they never received the requisite notice (indeed, the Castros only discovered the credit denial when they initiated contact with Great Lakes). What is not clear, however, is whether Union Nissan was the "creditor" that took the adverse action. As discussed above, the Castros present some evidence

that "Union Motors" obtained their credit report on September 4, 2000, but they also suggest that it was Great Lakes that initially attempted to set up financing and subsequently denied credit, which would presumably place the burden of the ECOA notice on Great Lakes. Summary judgment in the Castros' favor on their ECOA claim thus is inappropriate.

IV. The Illinois Consumer Fraud Act

The Castros finally assert that Union Nissan violated various provisions of the Illinois Consumer Fraud Act. *See* 815 ILCS 505/2 & 2C. First, in Count 4 of the complaint, the Castros assert that Union Nissan violated Section 2C of the Act by failing to return the Castros' down payment of $500 and the 1993 Jeep Cherokee after they were denied credit. Section 2C provides that

> [i]f the furnishing of merchandise ... is conditioned on the consumer's providing credit references or having a credit rating acceptable to the seller and the seller rejects the credit application ..., the seller must return to the consumer any down payment. ... The retention by the seller of part or all of the down payment, whether such down payment is in the form of money, goods, chattels, or otherwise, ... is an unlawful practice within the meaning of this Act.

815 ILCS 505/2C.

Union Nissan does not dispute that it failed to return the Castros' down payment. Rather, it asserts that the amount claimed by the Castros should be "discounted" for the time that the Castros enjoyed the use of the 1996 Toyota before it was repossessed. However, Union Nissan's argument is undermined by the language of the statute, which prohibits the seller from retaining a portion of the down payment as liquidated damages. 815 ILCS 505/2C; *see also Rayburn v. Car Credit Center Corporation*, No. 00 C 3361, 2000 WL 1508238 (N.D. Ill. Oct. 10, 2000) (withholding down payment for car as a charge for the use of a car prior to repossession

improper under Section 505/2C). Union Nissan's failure to return the down payment violates Section 2C, and we thus grant the Castros' motion for summary judgment on Count 4. *See Roche v. Fireside Chrysler-Plymouth, Mazda*, 235 Ill. App. 3d 70, 83, 600 N.E.2d 1218, 1226 (1992) (failure to return down payment violated Section 2C).

The Castros also seek summary judgment on Count 6 of the complaint, which asserts violations of Section 2 of the Consumer Fraud Act.[2] *See* 815 ILCS 505/2. Section 2 prohibits "any deception, false promise, or misrepresentation made in the course of conduct involving a trade or commerce." *Roche*, 235 Ill. App. 3d at 83, 600 N.E.2d at 1226; *see also Garcia v. Overland Bond and Investment Co.*, 282 Ill. App. 3d 486, 490-91, 668 N.E.2d 199, 203 (1996). The Castros assert that Union Nissan violated Section 2 by selling them the Toyota at a price $4000 greater than the advertised price and by promising – but failing – to pay off the lien on their Jeep Cherokee. Plaintiffs' Motion for Summary Judgment at 13.

Union Nissan argues that plaintiffs have failed to show that the 1996 Toyota was advertised for a lower price. However, by failing to respond to the Castros' Requests to Admit, Union Nissan admitted that it advertised the vehicle in September 2000 for approximately $21,200 – an amount approximately $4000 less than the amount it charged the Castros. Advertising goods with the intent not to sell them as advertised constitutes a violation of Consumer Fraud Act. *See, e.g., Garcia*, 282 Ill. App. 3d at 491, 668 N.E.2d at 203. We thus grant Castros' motion with respect to their claim of deceptive advertising.

---

[2] The Castros apparently do not seek summary judgment on Count 5 of their complaint, which alleges that Union Nissan violated Section 505/2 of the Consumer Fraud Act by engaging in a practice known as "spot delivery."

Union Nissan further argues that plaintiffs have not shown that Union's promise to pay off the lien was false or deceptive at the time it was made. Plaintiffs argue that Union Nissan never intended to pay off the lien because it had insufficient funds in its bank account to cover the lien. However, the evidence at this point does not support a finding as a matter of law that Union Nissan did not have the available funds to pay off the lien or that it never intended to do so. Accordingly, plaintiffs' motion on this claim is denied.

## Conclusion

Plaintiffs' motion for summary judgment [item # 28-1] is granted in part and denied in part as set forth above. Plaintiffs' motion to bar testimony or evidence [item #28-3] is denied as moot. This case is set for a status hearing on July 18, 2002 at 9:30 a.m. for the purpose of setting a trial date with regard to plaintiffs' damages on the claims on which they have obtained summary judgment as to liability and to address how plaintiffs' remaining claims will be dealt with.

Dated: July 3, 2002

MATTHEW F. KENNELLY
United States District Judge